AO 106 (Rev. 06/09) Application for a Search Warrant

FILED

APR 28 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

17MJ1265

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Iphone
IMEI: 355424677835539

Case No. ~~17cr0886~~

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein)

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of a Controlled Substance, Conspiracy to do the same |

The application is based on these facts:

See Affidavit of Special Agent Wesley J. Petonak (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Wesley J. Petonak, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/28/2017

[signature]
*Judge's signature*

City and state: San Diego, California

Hon. Ruben B. Brooks, United States Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | Case Number: 17cr686 |
| | ) | |
| **iPhone** | ) | AFFIDAVIT OF |
| IMEI: 355424677835539 | ) | HSI SPECIAL AGENT |
| | ) | WESLEY J. PEOTNAK |
| | ) | IN SUPPORT OF |
| | ) | SEARCH WARRANT |
| | ) | |

**AFFIDAVIT**

I, Wesley J. Petonak, Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by HSI special agents for the following target property: one iPhone ("Telephone #2")[1], seized from Jose Gerardo VILLALOBOS Moreno ("Defendant" or "VILLALOBOS") on or about February 24, 2017.

2. The target telephones were seized from VILLALOBOS on February 24, 2017, at the time of his arrest. It is believed that the target telephones were used by VILLALOBOS to communicate with co-conspirators during a drug smuggling event involving the importation of cocaine in the Southern District of California, Magistrate

---

[1] Concurrently submitted is a separate search warrant application and supporting documentation for a different telephone ("Telephone #1," and together with Telephone #2, the "target telephones") that was also seized from Villalobos on or about February 24, 2017.

Case 17MJ0577. Probable cause exists to believe that the target telephones contain evidence relating to violations of Title 21, United States Code, Sections 952, 960, and 963. The specified target telephones are currently in the possession of the Deputy Special Agent in Charge, San Ysidro, Seized Property Vault, located at 2255 Niels Bohr Court, San Diego, California, 92154. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the target telephones for and to seize, as they pertain to violations of Title 21, United States Code, Sections 952, 960, and 963, Distribution and Importation of Controlled Substances and Conspiracy, all electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2017 to February 25, 2017:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

b. tending to identify other facilities, storage devices, or services – such as e-mail addresses, IP addresses, phone numbers – that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling

of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the target phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## EXPERIENCE AND TRAINING

4. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have held my current position with HSI since October of 2010. Prior to becoming an HSI Special Agent, I obtained a Master's of Science in Management and a Bachelor of Arts, with honors, in Justice Studies from the College of Saint Elizabeth in Morristown, NJ.

5. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program ("CITP") and the Immigration and Customs Enforcement Special Agent Training ("ICESAT") training course. During these courses, I was trained in various types of criminal investigations, to include investigations involving the illegal trafficking of narcotics, currency, firearms and contraband.

6. My training and experience in narcotics enforcement has included the identification of different types of narcotics, including cocaine, and the investigation of persons in possession of narcotics for purposes of sales and transportation. In addition, I speak regularly with narcotics investigators at the federal, state and local level regarding the manner in which sellers of narcotics store, transport and sell narcotics.

7. I have participated in many aspects of criminal investigations including the

issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants. I am recognized by and have testified numerous times in the Superior Court of California, County of San Diego, as an expert witness regarding narcotics sales, narcotics values and narcotics smuggling techniques.

8. As a Special Agent with HSI, I have performed various tasks, which include, but are not limited to:

a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

b. Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics and the laundering of monetary instruments.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators

in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voice-mail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Therefore, I believe there will be evidence of VILLALOBOS'S involvement with other co-conspirators in this smuggling organization on the target telephones, and I believe that such evidence will date back to January 1, 2017, if not earlier.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

## FACTS SUPPORTING PROBABLE CAUSE

11. On February 24, 2017, Customs and Border Protection Officer ("CBPO") Guzman Barrera was performing primary inspection duties and the Otay Mesa Port of Entry ("POE") in San Diego, California ("CA"). At approximately 2:28p.m., Jose Gerardo VILLALOBOS Moreno ("the Defendant") presented himself to CBPO Guzman Barrera for admission in primary vehicle lane #2. VILLALOBOS was the driver and sole occupant of a gray Toyota Celica bearing Baja California, Mexico license plates ("the vehicle"). VILLALOBOS provided CBPO Guzman Barrera with a valid Secured Electronic Network for Traveler's Rapid Inspection ("SENTRI") card bearing his name, as well as a valid Border Crossing Card ("BCC" / "B1/B2 Visa"), also bearing his name.

12. VILLALOBOS stated that the purpose of his trip was to go to the Home Depot on Palm Avenue in San Diego. When asked if he had anything to declare, VILLALOBOS stated that he had an air compressor that he was going to return to the Home Depot. Throughout his contact with VILLALOBOS, CBPO Guzman Barrera observed that VILLALOBOS' hands were shaking, that his heart rate was so great that CBPO Guzman Barrera could observe his carotid artery pulsating and that he continuously avoided eye contact.

13. CBPO Guzman Barrera asked VILLALOBOS to open the trunk of the vehicle and observed a large box which appeared to contain an air compressor. CBPO Guzman Barrera attempted to lift the box out of the trunk, but was unable to do so because of its heavy weight. VILLALOBOS confirmed that he was the owner of the vehicle and he and the vehicle were then sent to secondary inspection for further examination.

14. In secondary inspection, CBPO Perez utilized a "Z-Portal" x-ray machine to conduct a non-intrusive scan of the vehicle. CBPO Perez observed anomalies in the vehicle's trunk. CBPO Perez opened the trunk, observed the large air compressor box and turned the vehicle over to CBPO Kim for further inspection.

15. CBPO Kim, with assistance from other officers, removed the compressor box from the vehicle's trunk and requested further assistance from CBPO Bence. CBPO Bence, a canine enforcement officer, utilized his narcotics detection dog ("NDD") to scan the vehicle for the presence of contraband. The NDD alerted to a trained odor emanating from the compressor box.

16. CBPO Kim further examined the compressor and observed non-factory tampering with the compressor above the tank. When the compressor was removed from the tank, CBPO Kim discovered a panel cut into the top of the tank. CBPO Kim removed the panel and discovered fifteen similar vacuum sealed packages contained within the air tank. CBPO Kim randomly probed one of the packages and found a white powdery substance that field tested for the characteristics of cocaine. The total weight of the packages was 18.70 kilograms (41.23 pounds).

17. Your affiant responded to the POE to investigate the smuggling incident. During my investigation, I discovered that VILLALOBOS was in possession of a Alcatel Onetouch Cellular Telephone ("Telephone #1") and an iPhone ("Telephone 2") at the time

of his arrest. I directed CBPO Kim to seize the target telephones in accordance with Title 19, Chapter I, Section 162.21(a) of the Code of Federal Regulations (19 CFR 162.21(a)), with the intent of obtaining a search warrant for the target telephones.

18. VILLALOBOS was transported to the San Diego Metropolitan Correctional Center ("MCC") for federal custody and judicial proceedings.

19. Based upon my experience and investigation in this case, I believe that VILLALOBOS, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import cocaine. Based on my experience investigating narcotics smugglers, I also believe that VILLALOBOS may have used the target telephones to coordinate with co-conspirators regarding the importation and distribution of cocaine, and to otherwise further this conspiracy both inside and outside of the United States.

20. Furthermore, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of VILLALOBOS and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the target telephones described herein.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Accordingly, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

24. As a result of the facts and circumstances described above, I believe that probable cause exists to conclude that VILLALOBOS used the target telephones to facilitate the offense of importing cocaine. The target telephones were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

25. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by VILLALOBOS continues to exist on the target telephones.

26. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth above in Paragraph 3 are likely to be found in the property to be searched described above in Paragraph 1. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

27. Because the target telephones were promptly seized during the investigation of VILLALOBOS'S smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by VILLALOBOS'S continues to exist on them. As stated above, I believe that the date range for this search is from January 1, 2017 to February 25, 2017.

//

I swear the foregoing is true and correct to the best of my knowledge and belief.

Wesley J. Petonak
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 28th day of April, 2017.

The Honorable Ruben B. Brooks
United States Magistrate Judge

# ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The property/item to be searched is described as:

**Telephone #2:**
Iphone
IMEI: 355424677835539

Currently in the possession of Seized Property Vault, Homeland Security Investigations San Diego, 2255 Niels Bohr Court, San Diego, California, 92154.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of January 1, 2017 to February 25, 2017:

a. tending to identify attempts to cocaine or some other controlled substance from the United States to Mexico;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of cocaine or some other controlled substance from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling cocaine or some other controlled substance from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of cocaine or some other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952, 960 and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.